```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FREDERICK W. FORTE,<br><br>      Plaintiff,<br><br>   v.<br><br>CHEVRON CORP., CHEVRON<br>ENVIRONMENTAL MANAGEMENT<br>COMPANY, TEXACO, INC., TEXACO<br>REFINING AND MARKETING, INC.,<br>and STAR ENTERPRISE,<br><br>      Defendants. | Civil No. 14-5843 (NLH/KMW)<br><br>OPINION |

**APPEARANCES**:

ALAN LEE FRANK
ALAN L. FRANK LAW ASSOCIATES, P.C.
135 OLD YORK ROAD
JENKINTOWN, PA 19046
     On behalf of plaintiff

MATTHEW S. SLOWINSKI
SLOWINSKI ATKINS, LLP
EISENHOWER CORPORATE CAMPUS
SUITE 2310
LIVINGSTON, NJ 07039
     On behalf of defendants

**HILLMAN**, District Judge

     Presently before the Court are the parties' cross-motions for summary judgment on plaintiff's claims that defendant[1]

---

[1] Defendants explain that Chevron Corporation and Chevron Environmental Management Company are not proper parties to this action. The lease at issue was entered into by Texaco Inc. and reassigned to Texaco Refining and Marketing Inc., which then assigned its interest in the lease to Star Enterprise. For ease of reference, the Court will refer to defendants as "defendant" or "Texaco."

breached its contract regarding the lease of a gas station. Defendant also requests leave to file a motion for sanctions against plaintiff and his counsel. For the reasons expressed below, defendant's cross-motion for summary judgment will be granted and plaintiff's summary judgment motion will be denied. Defendant shall be afforded 20 days to file a motion for sanctions if it still desires to do so.

## BACKGROUND

On October 5, 1983, plaintiff, Frederick W. Forte, entered into a lease agreement with defendant, Texaco Inc., for the lease of Plaintiff's gas station at Route 73 and Beech Avenue in Berlin, New Jersey.[2] The lease was structured as a "land-lease," where defendant purchased the building and equipment from plaintiff for $400,000 and then leased the land from him. The lease was for a term of five years starting on October 1, 1983 and ending on September 30, 1988. The lease granted defendant the right and option to extend the lease for three additional consecutive periods of five years each upon the same terms and conditions, but with rental increases of $1,800 per month for the first five year option; $2,160 per month for the second five year option and; $2,590 per month for the third five year option. Defendant exercised the first option to extend the

---

[2] Plaintiff operated the Beech Avenue property as a gas station from 1975 until 1983.

lease for the period October 1, 1988 to September 30, 1993.

After defendant had exercised the first option to renew, on December 29, 1988, a fire destroyed the gasoline service station building on the property, and the remaining structures had to be demolished.  Defendant continued to pay plaintiff the monthly rental payment of $1,800 per month until the lease extension expired on September 30, 1993.  Prior to the lease's expiration, on September 17, 1993, Texaco notified plaintiff in writing that it was terminating their lease at the expiration of the first renewal extension period.

During the time period between the fire and the termination of the lease, an environmental evaluation discovered contamination.  In May 1990, the underground storage tanks and associated dispensers were removed from the site by defendant.  During excavation activities, approximately 1,000 cubic yards of petroleum hydrocarbon-impacted soil were removed and transported off-site for disposal.  Remediation has been ongoing since that time, with completion anticipated by May 2019.

Because defendant still required access to plaintiff's property to facilitate the remediation process after the termination of the lease, on November 5, 1993, plaintiff and defendant entered into a License Agreement, which provided defendant access to the site and paid plaintiff $29,615.93 in site access fees per year.

On December 17, 2010, the 1993 License Agreement was terminated pursuant to a License Termination Agreement, and the parties entered into a new Site Access and License Agreement. Under this new agreement, plaintiff was paid $70,000 as a one-time access fee for defendant's access to the property to perform the remediation until it is completed.

In August 2014, defendant became aware that it was plaintiff's contention that a term of the parties' original lease agreement required defendant to return to plaintiff an "operable gasoline filling station with all necessary permits" upon the expiration or termination of the lease.  Because defendant disagreed, plaintiff filed suit for breach of contract and, in the alternative, for promissory estoppel.  Discovery has been completed, and plaintiff has moved for summary judgment as to liability.  Defendant has cross-moved for summary judgment in its favor as to all claims.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B. Cross-Motions for Summary Judgment

Summary judgment is appropriate where the Court is

4

satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. <u>See</u> <u>Iberia Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

    C.    **Analysis**

Plaintiff argues that the 1983 Lease Agreement, when read in tandem with the intentions of the parties and surrounding circumstances, clearly demonstrates that defendant was required to return to plaintiff at the expiration of the lease an "operable gasoline filling station with all necessary permits." To support his position, plaintiff presents the testimony of Robert Flynn, who served as the real estate agent for Texaco at the time the parties entered into the 1983 lease. Mr. Flynn states that it was the parties' intention that when the Beech Avenue station was returned to plaintiff, it would be returned to him as a "going" station with the proper permits. What

5

plaintiff received instead is a vacant piece of land which is being remediated for environmental contamination.

Defendant argues that plaintiff's claim is meritless. Defendant first points to the language of the 1983 Lease Agreement, which does not contain any provision for returning the property to plaintiff as a "going" gas station. Defendant also refers to the subsequent agreements between the parties that contain integration clauses that bar claims on prior agreements or representations. Defendant also argues that plaintiff's evidence to support his position is improper parol evidence and violates the statute of frauds. Defendant further contends that plaintiff's claims are barred by the statute of limitations, plaintiff cannot prove any damages, and plaintiff's entire case is frivolous and in violation of Federal Civil Procedure Rule 11.

The Court has fully reviewed all of the voluminous briefs and supporting documents provided by the parties, and has carefully considered all of the parties' arguments. Without needing to address every argument, the Court concludes that plaintiff's claim that defendant was required to provide plaintiff with an operational gas station with required permits at the end of the lease is unsupportable as a matter of law, for two independently dispositive reasons: (1) the terms of the 1983 Lease Agreement and other documents are unambiguous and the

6

extrinsic evidence supports their plain and ordinary meaning, and (2) plaintiff has not met his burden of establishing that he has suffered any damages.

### 1. Interpretation of the parties' agreements

Under New Jersey law, the interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation. <u>Celanese Ltd. v. Essex Cty. Improvement Auth.</u>, 962 A.2d 591, 600 (N.J. Super. Ct. App. Div. 2009). The "fundamental canons of contract construction require that [courts] examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." <u>Highland Lakes Country Club & Cmty. Ass'n v. Franzino</u>, 892 A.2d 646, 656 (N.J. 2006) (citation omitted). Where a contract is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation; where the terms of a contract are clear, however, the court must enforce it as written. <u>Cty. of Morris v. Fauver</u>, 707 A.2d 958, 969 (N.J. 1998). A court must be careful not to make "a better or more sensible contract than the one [the parties] made for themselves." <u>Kotkin v. Aronson</u>, 815 A.2d 962, 963 (N.J. 2003) (citations omitted).

"In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document."  Conway v. 287 Corporate Ctr. Assocs., 901 A.2d 341, 346 (N.J. 2006).  Extrinsic "evidence is adducible only for the purpose of interpreting the writing – not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant."  Id.

In this case, the terms of the 1983 Lease Agreement do not require defendant to return to plaintiff a fully operational gas station with permits at the end of the lease.  The relevant portions of the 1983 Lease Agreement provide:

> Paragraph 4(c): Lessor further agrees that in the event any structures on said premises are damaged or destroyed, lessor shall notify lessee within twenty (20) days from the date of such destruction or damage whether or not lessor intends to restore the premises to their former condition and if lessor so elects to restore the premises to their former condition, lessor shall replace within one hundred twenty (120) days any such structures damaged or destroyed. If lessor fails to notify lessee within said twenty (20) day period or notifies lessee that lessor does not intend to restore the premises, or fails to restore the same, lessee at its election may immediately terminate the lease effective as of the date the damage or destruction occurred, in which event rental shall abate from the date of destruction or damage, or do the necessary repairing or rebuilding itself and have the right to apply accruing rentals to reimburse itself for the principal expenditure, together with interest at six per cent. If prior to and/or during the time the premises are undergoing repairs the use

>    thereof by lessee is materially interfered with, the rent
>    accruing during such period or periods shall abate.

(Docket No. 57-4 at 3.)

>    Paragraph (5) Removal of Property.  Lessee shall have the
>    right at any time during the continuance of this lease or
>    within thirty (30) days after its termination to sever and
>    remove all fixtures, equipment and other property owned by
>    lessee or placed on said premises by lessee during the
>    terms of this or any previous lease, or any extension or
>    renewal thereof.

(Docket No. 57-4 at 3.)

>    Paragraph 20:  Lessee shall have the right to make any
>    improvements, additions or alterations to buildings and
>    improvements now on said premises and to construct and
>    install on said premises such additional buildings,
>    improvements, equipment, signs and advertising devices as
>    Lessee may elect. Lessee further reserves the right to
>    demolish, remove or replace any of lessor's or lessee's
>    buildings, canopies, improvements, fixtures, underground
>    equipment and tanks, aboveground equipment and other
>    removable property at any time during the term of this
>    Lease, and any extensions thereof. At the expiration or
>    earlier termination of this Lease, title to all buildings
>    and/or canopies shall automatically and without the
>    necessity of any further document be deemed the property of
>    the lessor. Further, lessee agrees to offer lessor at the
>    expiration or earlier termination of this Lease all other
>    equipment including, but not limited to underground
>    equipment and tanks, pumps, yard drainage, sanitary
>    facilities, lifts, compressors, exterior lighting,
>    equipment used for a car wash, and equipment
>    used for a food-mart, if any such equipment is at the
>    premises at the time of termination, at a price based on
>    Texaco's actual cost depreciated at a rate of ten (10%) per
>    annum.

(Docket No. 57-4 at 4.)

>    Paragraph 21: TEXACO shall maintain during the continuance
>    of this lease liability and property damage insurance
>    covering TEXACO and LESSOR as joint insureds, with limits
>    of not less than Five Hundred Thousand Dollars ($500,000)
>    for injury or death of one person and not less than Seven

9

>    Hundred Fifty Thousand Dollars ($750,000.00) for any one
>    accident and not less than One Hundred Thousand Dollars
>    ($100,000) for property damage in any one accident
>    sustained on the premises, and with an insurer, of TEXACO'S
>    selection whose certificate to the existence of such
>    insurance TEXACO shall furnish LESSOR upon request.

(Docket No. 57-4 at 4-5.)

>    Paragraph 22: Lessor warrants and represents that all
>    necessary permits for the operation of the existing
>    gasoline service and filling station on the subject
>    premises, including permits for existing approaches and
>    curb cuts, have been secured and are currently in full
>    force and effect, and, upon demand of lessee, shall assign
>    and transfer said permits to lessee in proper form, meeting
>    all requirements of law. Should Lessee reconstruct said
>    premises, Lessee shall obtain such permits as it may
>    require for the use of the reconstructed premises as and
>    for the sale of gasoline and such other uses as Lessee
>    shall deem necessary. Lessee agrees to maintain such
>    permits for the existing development or any reconstruction
>    thereof, but shall not be liable for any loss thereof if
>    they are lost through no overt action on the part of
>    Lessee.

(Docket No. 57-4 at 5.)

None of these provisions obligate defendant to provide an

"operational gas filling station" – whatever that term may mean[3]

---

[3] As discussed below in the Court's analysis of damages, plaintiff does not articulate his understanding of the meaning of the alleged contractual term "operational gasoline filling station."  The structures burned down or were demolished during the tenure of the lease in December 1988, and it was not until May 1990 that environmental concerns were discovered.  There is no evidence in the record that during the year in between, plaintiff demanded that defendant rebuild in any certain way that would ensure that he would be provided with an "operational gasoline filling station" at the expiration of the lease. Indeed, paragraph 4(c) of the lease actually placed the cost of repair and replacement due to destruction on plaintiff, yet plaintiff now demands that defendant bear that cost in some unknown way. Even if the Court were to interpret the agreement

10

- with valid permits at the termination of the lease.

In addition to the plain language of the lease, the circumstances before and after the signing of the lease do not support plaintiff's position. First, on October 5, 1983, defendant paid plaintiff $400,000 to own all structures on the land, and then defendant paid a monthly rent to plaintiff for use of just the land. This event comports with Paragraph 20, which permits defendant to remove all structures if it desired to, with no obligation to replace them.[4]

Second, the 1983 Lease Agreement and other subsequent agreements contained integration clauses, which preclude the consideration of extrinsic evidence as to terms not included in the contract.[5] Viglione v. Frisina, No. A-5668-11T2, 2013 WL

---

to include a provision for an "operational gasoline filling station," the ambiguity of that phrase precludes a finding of a breach.

[4] It would make sense that defendant would rebuild any structures that it removed so that it could operate a gas station, as that was the entire business reason for defendant's lease of plaintiff's property. Without the equipment to sell gas, defendant would be paying rent and other expenses on vacant land for no pecuniary benefit. The lease, however, permitted defendant to do just that if it wanted to. Ironically, with the fire and environmental damage, that is exactly what happened.

[5] To support his position regarding the parties' intent, plaintiff cites to a letter from Mr. Flynn to plaintiff dated September 30, 1983, which informs plaintiff that the lease agreements would be coming in the next week, and lists the "salient points of our agreement." (Docket No. 50-4 at 1.) Plaintiff relies upon two "salient points" listed: "3. Texaco has the right to raze and rebuild."; "6. Texaco agrees to

11

1457581, at *6 (N.J. Super. Ct. App. Div. Apr. 11, 2013) (citing Filmlife, Inc. v. Mal "Z'' Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991) (holding that where a contract demonstrates that the parties have merged all prior negotiations and agreements in writing, the parol evidence rule bars evidence of prior negotiations and agreements tending to add or vary the terms of the writing being considered); Harker v. McKissock, 96 A.2d 660, 665 (N.J. 1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties.")).

Even accepting as true that in October 1983, Mr. Flynn and plaintiff anticipated, as a matter of common sense based on the business interests of defendant, that plaintiff would receive an

---

maintain in proper order all permits required to market motor fuels."  Both of these points are supported by the terms of the lease agreement but it does not follow that defendant was required to provide plaintiff with an operating gas station with valid permits at the end of the lease.  Moreover, the 1983 Lease Agreement provides in paragraph 18: "No prior stipulation, agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in the provisions of this lease." (Docket No. 57-4 at 6.)

Relatedly, plaintiff argues that Mr. Flynn had actual or implied authority to bind defendant to his promises to plaintiff.  Even if that were true, Mr. Flynn retired in 2002, and plaintiff and defendant executed additional agreements with integration clauses after that time.

operational service station at the end of the parties' contractual relationship, fire that destroyed the structures, leaking gas tanks that required removal, unconsummated plans for Texaco development at another site owned by plaintiff, and over 20 years of environmental remediation altered that possibility. All of the parties' agreements over the years during the course of these events contained explicit provisions regarding a variety of issues, including destruction of property and site access fees, but none of them contained a provision that set forth the obligation of defendant to provide plaintiff with an operational gas filling station with the attendant licenses.[6] Plaintiff's breach of contract claim, or any alternative basis for equitable relief, is therefore not maintainable as a matter of law.

### 2. Assessment of damages

Also fatal to plaintiff's claims is his lack of proof as to his damages. A breach of contract claim requires proof of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff. <u>RNC</u>

---

[6] It is axiomatic that without the presence of a gas station, defendant could not provide plaintiff with the permits authorizing its operation. Paragraph 22 in the 1983 Lease Agreement acknowledged the possibility that permits may be lost under the circumstances of this case: "Lessee agrees to maintain such permits for the existing development or any reconstruction thereof, but shall not be liable for any loss thereof if they are lost through no overt action on the part of Lessee."

13

Sys., Inc. v. Modern Tech. Grp., Inc., 861 F. Supp. 2d 436, 444-45 (D.N.J. 2012) (citations omitted).[7]  Judicial remedies for breach of contract fall into three general categories: restitution, compensatory damages, and performance.  Donovan v. Bachstadt, 453 A.2d 160, 165 (N.J. 1982).  "The rationale for restitution is to return the innocent party to his status before the contract was executed.  Compensatory damages are intended to recompense the injured claimant for losses due to the breach, that is, give the innocent party the benefit of the bargain.  Performance is to effect a result, essentially other than in terms of monetary reparation, so that the innocent party is placed in the position of having had the contract performed."  Id.

    Because plaintiff no longer owns the Beech Avenue property,[8] he cannot seek restitution or specific performance.  In terms of compensation for defendant's alleged failure to provide him with an "operational gasoline service and filling station with all

---

[7] A claim of promissory estoppel also requires that plaintiff prove he suffered damages.  To prevail on an equitable estoppel claim, a plaintiff must demonstrate: (1) a material misrepresentation; (2) reasonable reliance upon the misrepresentation; and (3) damages resulting from the misrepresentation.  Alexander v. CIGNA Corp., 991 F. Supp. 427, 439 (D.N.J.) aff'd, 172 F.3d 859 (3d Cir. 1998).

[8] In December 2012, plaintiff sold the property to Route 73 Berlin Development Partners, LLC, which is comprised of plaintiff's lawyers in this case, Alan Frank, Esquire and Kyle Kulzer, Esquire.

required permits," plaintiff provides a report of an expert who determined that it would cost $1.8 to over $2.6 million to rebuild an operational gas station, complete with a convenience store.  Defendant challenges plaintiff's assertion of damages, particularly because the proposed rebuild far exceeds the bare-bones gas station defendant leased in 1983.

The facts in the record show that plaintiff has already received significantly more than the "benefit of the bargain" of his contract with defendant, with the fire and environmental contamination actually causing plaintiff a monetary gain that far exceeded what he would have received under a fully exercised three-option lease.

Had the environmental contamination not occurred during defendant's tenancy, the parties' relationship would have resulted in one of three scenarios.  When the lease was signed in October 1983, defendant paid plaintiff $400,000 for the existing structures that caused the land to be an operational gasoline service station.  If the property sat unused and unimproved until the termination of the lease in October 1993, the station would have returned to plaintiff as "operational," but he would have gained $400,000, plus more than $198,000 in rental payments, for the property in the exact same state as it was in 1983.

If, however, defendant had demolished and rebuilt the

15

service station during its occupancy, under lease paragraph 20, plaintiff would have been required to repurchase from defendant the improved equipment and other items in order to recover an operational gas station at the end of the lease.  If defendant had been required to demolish structures because they were damaged, as ended up being the case, plaintiff would have been obligated under lease paragraph 4(c) to pay for any repairs that defendant made to rebuild an operational gas station, or lose rent payments if defendant had left the property.  Under these three scenarios, only if defendant never set foot on plaintiff's property for the 10-year duration of the lease would plaintiff have received an operational gas station without having any additional expenditures as contemplated by the lease.

The environmental contamination turned out to be a windfall to plaintiff despite plaintiff's property no longer having an operational gas station.  Plaintiff was never required to pay for repairs or upgrades, which would have been made by defendant if the property had not become contaminated, and defendant paid plaintiff approximately $573,000 in site access fees from 1993 to 2010.  Rent for that time period would have provided plaintiff with only about $390,000.

Putting aside the at least $180,000 gain that the un-operational gas station provided to plaintiff over the return of an operational gas station, the appropriate measure of

16

consequential damages for a breach of contract is to place the plaintiff in the same position he would have been in but for the breach. Even if the 1983 Lease Agreement could be read to include the requirement that defendant return to plaintiff an "operational gasoline service and filling station with all required permits," the cost of constructing an undisputedly incomparable brand new service station is not that "same position." Plaintiff has failed to provide any proofs to appropriately define and quantify his damages resulting from the return of property that no longer was a functional gas station.[9] Without establishing his damages, plaintiff cannot meet the required elements to prove his claims.

### 3. Defendant's request to file a motion for sanctions

Defendant has asked this Court to allow it to file a formal motion for sanctions against plaintiff and his counsel. Defendant states that it "does not make this request lightly," and argues that "this case involves more than a failure to

---

[9] Defendant has provided an expert who states that the appropriate measure of damages in this case would be the diminution of the value of the land. Defendant's expert also states that the land was, and is, more valuable without a gas station on the property, which is currently up for sale as one parcel combined with plaintiff's five other properties. Because the Court has found that defendant did not breach its lease agreement with plaintiff, and because it is plaintiff's burden to prove his damages even if plaintiff's breach of contract or promissory estoppel claims were viable, the Court does not need to opine as to what the appropriate measure of damages would be.

inquire into the facts and law before filing an action. It goes beyond well-intentioned zealous advocacy" because "false statements were made on material issues and attributed to witnesses, including one who is deceased." (Docket No. 67 at 16.) Plaintiff's counsel has objected to defendant's view of their actions.

The legal standard to be applied when evaluating conduct which allegedly violates Rule 11 is reasonableness under the circumstances, with reasonableness defined as an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well-grounded in law and fact. Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991) (citations omitted). Generally, sanctions are prescribed "only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." Id. (citations omitted).

If defendant believes that it can demonstrate bad faith and improper motives by plaintiff or his attorneys, or that there was no good faith basis for plaintiff or his attorneys to believe that his claim had a reasonable basis in law or equity, the Court will allow defendant 20 days to file a motion consistent with Federal Civil Procedure Rule 11. Plaintiff shall have 20 days to file an opposition.

18

**CONCLUSION**

A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner. Hardy ex rel. Dowdell v. Abdul-Matin, 965 A.2d 1165, 1169 (N.J. 2009). A "fair and common sense" view of the plain language of the parties' 1983 Lease Agreement, the circumstances surrounding its execution, and the subsequent agreements and events all show that defendant providing plaintiff with an "operational gasoline service and filling station with all required permits" was not a breachable term of the parties' agreements. Nor has plaintiff shown, even if such a term existed, that he has suffered any quantifiable damages. Accordingly, summary judgment must be entered in defendant's favor on all of plaintiff's claims.

Although an unsuccessful claim does not usually suggest a violation of Rule 11, the Court will grant defendant's request for leave to file a sanctions motion against plaintiff and his counsel should it feel it has a good faith basis to do so.

An appropriate Order will be entered.


Date:  February 25, 2016             s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.